**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHLEEN KURTZ, Parent and Guardian of MINOR JX, and ROBERT STRAUB, Best Friend of Minor JX, | No. 4:21-CV-01048 (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| LEWISBURG SCHOOL DISTRICT, | |
| Defendant. | |

**MEMORANDUM OPINION**

**FEBRUARY 10, 2022**

In June 2021, Kathleen Kurtz, JX's mother, and Robert Staub, JX's stepfather, sued Lewisburg School District for violating Title IX of the Education Amendments of 1972.[1] They allege that their son's school failed to address persistent, sexually degrading bullying and harassment, and that this failure ultimately resulted in their then-14-year-old son being unable to attend school in person.[2] The School District, however, has moved to dismiss the complaint, arguing that the bullying and harassment that JX allegedly endured—though sexually tinged—is not cognizable "sexual harassment" under Title IX.

---

[1]   *See* Doc. 1; 20 U.S.C. § 1681.
[2]   *See* Doc 10 at 8; *see also* Doc. 1 ¶¶ 149–150, 154–57.

The motion is now ripe. Because I agree with the School District, I grant its motion to dismiss.

## I.   BACKGROUND

In Kurtz and Staub's telling, the bullying began in November 2020 and gained steam throughout the winter, with various classmates calling JX a "rapist, pedophile and child molester."[3] Shortly after JX told his parents about these comments, they arranged a meeting with his then-principal, Jeremiah Bennett, to address his mistreatment.[4] But despite Mr. Bennett's assurances that the bullying would be addressed, it only intensified.[5]

Kurtz and Staub continued to be in touch with Mr. Bennett and the school in the weeks that followed.[6] During one of their exchanges, he revealed that there was an ongoing criminal investigation that the school had "not been able to share further details [about] . . . out of a sensitivity to hampering an ongoing investigation that does not involve (JX) directly."[7] In that same message, Bennett passed along the contact information for the officer in charge of the investigation.[8]

---

[3]    Doc. 1 ¶ 9.
[4]    *Id.* ¶¶ 11–12. Mr. Bennett was the acting principal until Mr. Drozin, the school's regular principal, returned from medical leave in mid-April. *Id.* ¶ 94.
[5]    *Id.* ¶¶ 14–23.
[6]    *Id.* ¶¶ 20, 26
[7]    *Id.* ¶ 27.
[8]    *Id.*

But as it turned out, there were two investigations. One was investigating JX's bullying and harassment.[9] The other was investigating an anonymous rape allegation made against JX in mid-March 2021.[10] And while the police would later determine that the allegation was fabricated, with this accusation hanging in the balance, JX's bullying continued.[11]

Throughout April, as JX became increasingly withdrawn, anxious, depressed, and unwilling to attend school despite counseling, Kurtz and Staub continued to try to work with the school—hoping that their son could attend without fear of bullying and harassment.[12] But in their telling, these efforts were of little avail; the bullying continued on into May, despite several meetings.[13]

By the middle of the month, however, the situation became untenable.[14] After a series of events where one student threatened that "if [JX] ever touched another girl, he would beat his ass" and two others allegedly tried to instigate a fight with him, JX was removed from in-person instruction by his mother, stepfather, and pediatrician to safeguard his physical and emotional safety.[15]

---

[9]   *Id.* ¶ 35.
[10]  *Id.* ¶¶ 35–41, 58.
[11]  *Id.* ¶¶ 59–60, 62–79. JX would not be cleared of this accusation until he withdrew from in-person instruction. *See id.* ¶ 158 (noting that on May 14, 2021, "Sergeant Hetrick reported that after he had reinterviewed the girl who accused JX of rape, he had concluded that she had made everything up and, as far the Police were concerned, the matter would be closed without any charges being filed").
[12]  *Id.* ¶¶ 64–108.
[13]  *Id.* ¶¶ 80–85, 86–88, 93–100, 112–114.
[14]  *Id.* ¶¶ 124–141.
[15]  *Id.* ¶¶ 124, 126–129, 137–138, 149–158. For the rest of the school year, JX would instead receive homebound instruction. *Id.* ¶ 157.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." Following the landmark decisions *Bell Atl. Corp. v. Twombly*[16] and *Ashcroft v. Iqbal*,[17] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] In its assessment, the Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[19] Still, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[20] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[21]

## III.    ANALYSIS

Kurtz and Staub contend that their child's treatment violated Title IX.[22] The law provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

---

[16]    550 U.S. 544 (2007).

[17]    556 U.S. 662 (2009).

[18]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[19]    *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[20]    *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[21]    *Iqbal*, 556 U.S. at 678.

[22]    *See* Doc. 1 ¶ 1.

discrimination under any education program or activity receiving Federal financial assistance . . . ."[23] School districts can be sued for student-on-student harassment if

> (1) [they] received federal funds; (2) sexual harassment occurred; (3) the harassment took place under circumstances wherein the [school district] exercised substantial control over both the harasser and the context in which the harassment occurred; (4) [they] had actual knowledge of the harassment; (5) [they were] deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school.[24]

Kurtz and Staub's complaint fails at the second step.

Title IX's ambit does include all sexually tinged harassment. It is limited to instances when the harassment occurs because of the person's sex or gender.[25] Under current law, plaintiffs can show that the student-on-student harassment was "on the basis of sex"—and therefore violates Title IX—in three ways.[26] "They can show that 'the harasser was motivated by sexual desire, that the harasser was expressing a

---

[23]   *See* 20 U.S.C. § 1681(a).

[24]   *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332 (W.D. Pa. 2008) (citing *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650–52 (1999)); *see also Smith v. Mid-Valley School District*, 2019 WL 3202175, at *2 (M.D. Pa. July 16, 2019) (Caputo, J.) ("Title IX encompasses sexual harassment of a student by a teacher or another student and is enforceable through an implied private right of action for damages against a school district.").

[25]   *See Betz v. Temple Health Sys.*, 658 Fed. Appx. 137, 143 (3d Cir. 2016) (noting that in *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 264 (3d Cir. 2000), "we explained that there were 'at least three ways' by which a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination 'because of' his or her gender.").

[26]   *Id.*

general hostility to the presence of one sex . . . , or that the harasser was acting to punish the victim's noncompliance with gender stereotypes.'"[27]

In response to the School District's challenge that they have not satisfied this requirement, Kurtz and Staub reply with a single, uncited sentence: "The insults pedophile, rapist and child molester encompass sexually degrading taunting and humiliation sufficient to satisfy this element."[28] Their failure to marshal a single case supporting this assertion—that sexually degrading taunting constitutes sex-based harassment—or to even argue that it fell into one of these three categories foreshadows the result.

Put simply, Kurtz and Staub's complaint does not allege that their child was harassed because of his sex. It alleges that he was harassed because he was falsely accused of committing sexually heinous acts.[29]

His classmates' bullying comments—calling him a "pedophile, rapist and child molester"—do not show sexual desire, reflect a particular hostility to males, or stem from  failure to comply with male stereotypes.[30] And "to support a claim of sexual harassment, a plaintiff 'must always prove that the conduct at issue was not

---

[27]   *Humphries v. Pennsylvania State Univ.*, 2021 WL 4355352, at *23 (M.D. Pa. Sept. 24, 2021) (quoting *Bibby*, 260 F.3d at 264) (internal alterations omitted).
[28]   Doc. 10 at 10.
[29]   Doc. 1 ¶¶ 9, 10, 16, 17, 22, 97, 108, 112, 116 & 141 (describing the harassment).
[30]   *See Bibby*, 260 F.3d at 264

merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex.'"[31] Kurtz and Staub have not done so here.

## IV.    CONCLUSION

Because Kurtz and Staub fail to allege facts showing that their son's harassment was based on his sex, Lewisburg School District's motion to dismiss is therefore granted. Kurtz and Staub, however, are granted leave to amend.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[31]    *See Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442, 446 (M.D. Pa. 2016) (Munley, J.) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).